IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DANA L. BROWN, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 07-991 |
| | ) | |
| WASHINGTON COUNTY and | ) | |
| WASHINGTON COUNTY CHILD CARE | ) | |
| INFORMATION SERVICES, | ) | |
|     Defendants. | ) | |

## MEMORANDUM OPINION

HAY, Magistrate Judge

Plaintiff, Dana L. Brown, brings this action against Defendants, Washington County and Washington County Child Care Information Services, alleging that, on May 19, 2004, they unlawfully terminated her from her position as an Information Specialist based on her race (African-American) and her disability (irritable bowel syndrome), thereby violating her rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000-e to 2000e-17 (Title VII), the Americans With Disabilities Act, 42 U.S.C. §§ 12101-12117 (ADA), the Pennsylvania Human Relations Act, 43 P.S. §§ 951-63 (PHRA), and the Pennsylvania constitution. Defendants have filed a motion for summary judgment. After careful consideration of the motion, the memoranda of law in support and in opposition and the supporting materials supplied by the parties, this Court will grant Defendants' motion.

Facts

Plaintiff is an African American female. (Compl. ¶ 5.)[1] She was employed by Washington County in its Child Care Information Services ("CCIS") department as an

---

[1]Docket No. 1.

Information Specialist from 1998 to May 19, 2004, when her position was eliminated. (Defs.' App. Ex. A[2]; Brown Dep. at 10, 41-42.[3]) CCIS is a department of Washington County that provides subsidized child care and information and referral services to working families. (Kimmel Dep. at 14.)[4] Plaintiff's duties as an Information Specialist consisted of primarily clerical functions such as answering the phones, greeting people, supporting other staff, and distributing mail. (Kimmel Dep. at 26, 87.)

Timothy Kimmel was hired by the County in March of 2004 to investigate and address internal problems within the CCIS department, specifically personnel issues. (Kimmel Dep. at 4, 19-20.) Kimmel spends half of his time as the Director of CCIS and the other half as the Human Services Director. (Kimmel Dep. at 15.)

After a review of the nine employees' personnel files within the department and personal interviews with each, he determined that there were a number of unhappy employees and a reorganization was required. ((Kimmel Dep. at 23.) He then investigated the specific job functions required to run the department by speaking with the Department of Public Welfare and other CCIS departments. (Kimmel Dep. at 25.) Kimmel looked at what positions he needed to maintain the Department and adequately service the citizens of Washington County. Based upon the level of activity in the department and discussions with other CCIS departments, Kimmel concluded that he had two Information Specialists and that he only needed one. (Kimmel Dep. at

---

[2]Docket No. 24.

[3]Pl.'s Resp. (Docket No. 31) Ex. A.

[4]Docket No. 31 Ex. C.

28.) Kimmel also concluded that the department needed only two, and not three, Eligibility Coordinators, and he terminated the Director and the Fiscal Technician. (Kimmel Dep. at 28.)

Kimmel states that the reason that Plaintiff was terminated was due to the fact that an Information Specialist position had been eliminated as part of the reorganization and he had to decide which of the two would continue to be employed. (Kimmel Dep. at 49.) When presented with the decision as to who would be retained by the County, Kimmel considered the job performance of Plaintiff and Jerry Fleming, the other Information Specialist, but mostly he considered the issue of attendance. (Kimmel Dep. at 49.) Kimmel looked at the attendance records of each of the employees who were employed in positions in which the number of employees was going to be reduced, including Plaintiff and Fleming. (Kimmel Dep. at 55.)

With respect to Plaintiff, Kimmel states that he reviewed performance reviews dating back to 2001, which demonstrated an attendance issue. (Kimmel Dep. at 57-58.) Plaintiff responds that all of the absences were either legally excused with medical support, consistent with County policy and/or covered by the Family and Medical Leave Act. (Brown Dep. at 37-38.)

According to Defendants' records and as reflected on Plaintiff's Performance Appraisals, which she signed, she missed 27.19 days from July 2001 through June 2002; 21.06 days between January 2002 through December of 2002; 15.5 days between January 2003 and December 2003; and 13 days between January 12, 2004 and February 9, 2004 (6 of which were accepted as FMLA leave). (Defs.' App. Ex. C.)

Plaintiff's Performance Appraisal from July of 2001 through June of 2002 states that she "needs to work toward an acceptable attendance record." (Defs.' App. Ex. C.) The Performance

Appraisal from January 2002 through December 2002 states that she "must work to meet an acceptable attendance record." (Id.) The Performance Appraisal from January 2003 through December 2003 states "Poor attendance has at times had direct affect on meeting required deadlines" and "attendance does not meet acceptable County limits." (Id.)

Plaintiff was sent to the Employee Assistance Program (EAP) for her attendance records in September of 2003. (Brown Dep. at 43.) Plaintiff was issued a written warning on February 11, 2004 stating "[i]t is evident that you have continued to abuse the sick leave system in 2004." Plaintiff signed the Written Warning. She was referred to the EAP for counseling and directed to continue sessions until her attendance improved. (Defs.' App. Ex. D.) Plaintiff contends that the EAP counseling was for personal issues she was experiencing relating to her father, who was ill and who subsequently passed away. (Brown Dep. at 36, 43-44.) However, that contention is not supported by the document of record, which states that she was sent to EAP counseling because of her absences.

Kimmel stated that "an excused absence from work is just that. But her attendance and tardiness, in my mind, went beyond excused absences." (Kimmel Dep. at 58-59.) Kimmel also noted that Plaintiff had been sent to internal counseling sessions with the EAP, and she actually failed to attend a session on March 22, 2004. (Kimmel Dep. at 59; Def.'s App. Ex. E.)

Kimmel states that he also considered the personal issues that Plaintiff had brought to work, which concerned her co-workers. (Kimmel Dep. at 66.) Apparently, Plaintiff told her co-workers that a drive-by shooting had occurred at her home and on another occasion she told them that her brother was missing or absent, and the co-workers had expressed concern for their own safety because they worked with her. (Kimmel Dep. at 66-67.) Kimmel's response to

4

Plaintiff's supervisor when she notified him about these incident was to counsel Plaintiff not to bring matters like that into the office. (Kimmel Dep. at 68-69.) Plaintiff contends that this represents a cultural stereotype and that Kimmel should not have based his decision on the irrational fears of her co-workers.

Ultimately, Kimmel determined that Plaintiff's position would be eliminated, and that Fleming, also an African American, would retain her position. Plaintiff contends that Kimmel structured the so-called reorganization in such a way that the one of the two African-American employees in the nine-person department would be guaranteed to be terminated. (Kimmel Dep. at 71-72.)

Plaintiff was advised that her position had been eliminated on May 19, 2004. (Def.'s App. Ex. A; Brown Dep. at 48.) Plaintiff states that Kimmel told her the reason was "budgetary." (Brown Dep. at 50.)

Kimmel made the final decision with respect to hiring and firing and the County Commissioners had final approval. (Kimmel Dep. at 17.) Kimmel's decisions have never been overruled by the County Commissioners. (Kimmel Dep. at 17.) The County Commissioners approved Kimmel's decision for the reorganization of the CCIS department. (Kimmel Dep. at 30.)

Plaintiff stated at her deposition that she had no evidence or any reason to believe that Kimmel, the individual who designed the reorganization plan, was prejudiced against African Americans. (Brown Dep. at 58.) She also stated that she has no evidence that Michelle Miller Kotula, the head of human resources, was prejudiced against African Americans. (Brown Dep. at 61.) She bases her claim on the fact that Kelly Hanna, a white employee with attendance issues,

received more favorable treatment. (Brown Dep. at 39, 58.) She also refers to the fact that there was a drive-by shooting at her home (with which she contends she had no personal involvement), and argues that this raised an unfounded and stereotyped fear in her co-workers which played a part in the loss of her job. (Kimmel Dep. at 66-67.)

Plaintiff admits that Hanna worked as a Resource and Referral Specialist, and that her own position was an Information Specialist. (Brown Dep. at 40.) Defendants note that the job description of Resource and Referral Specialist reads "a bachelor's degree in social work, psychology, sociology or a related field or experience in resource and referral is preferred." (Def.'s App. Ex. G.) Plaintiff does not hold a bachelor's degree, and testified that her only experience in the required field was that she provided support services as an Information Specialist to Sandy Sabot, a Research and Referral Outlook Specialist. (Brown Dep. at 45, 59-60.)

Plaintiff responds that the only formal education requirement for the position of Resource and Referral Specialist is "a high school diploma or equivalent, with general office/customer service experience and computer (word processing) skills." Not only did she have all these skills, but she also had completed more that two years college work and had an Associate's Degree in Business. (Brown Dep. at 9, 59-60.)

Plaintiff also argues that Jerry Fleming, the only other Information Specialist, was treated more favorably than she was because she was retained during the reorganization, and her position was not terminated as Plaintiff's position was. (Kimmel Dep. at 49.) Defendants observe that Fleming is African American, and therefore, is a member of her protected class. (Kimmel Dep. at 71.)

Plaintiff admits that her position was eliminated due to the reorganization of the department plan that was recommended and implemented by Kimmel. (Brown Dep. at 55.) However, she maintains that the motive behind the elimination is disputed.

Plaintiff also claims that she was terminated due to her alleged disability, irritable bowel syndrome (IBS). Defendants note that Plaintiff admits that she was diagnosed with *episodic* IBS. (Brown Dep. at 32.)

No medical record or documentation submitted to her employer indicates that her episodic IBS occurred at any other time or was anticipated to occur at any other time than in January of 2004 and "flare ups" between April 13, 2004 and April 21, 2004. (Defs.' App. Ex. H.) Plaintiff testified that the written documentation that the County had concerning her IBS consisted of two disability certificates that were submitted in January of 2004 with the date of January 12th and January 15th, the FMLA papers signed by her physician in February of 2004, and another set of FMLA papers that were submitted in April of 2004. (Brown Dep. at 86.) The disability certificates dated January 12, 2004, January 15, 2004 and March 12, 2004 do not reflect a diagnosis. The certificates reflect that she had "medical issues." (Defs.' App. Ex. I.)

Plaintiff's February 19, 2004 and April 19, 2004 FMLA forms completed by her physician, Dr. William Pendergast, indicate a diagnosis of "*episodic* irritable bowel syndrome." Additionally, Dr. Pendergast wrote in No. 7 of the FMLA form that it is "unlikely" that she would be unable to perform work of any kind. (Defs.' App. Ex. I.)

Plaintiff was able to work without accommodation following the elimination of her position. She testified that since May of 2004 she was employed at the following companies: Kelly Temporary Services, Shop-N-Save, United Cerebral Palsy, Apria, Servicemaster, and

Washington-Greene ARS. (Brown Dep. at 20-29.) Although Plaintiff considered her IBS a "physical limitation," she admitted that it "did not factor into any job that [she] was looking for." (Brown Dep. at 29.) Plaintiff notes that her doctor has informed her that her episodes can return, especially in a stressful environment. (Brown Dep. at 62-63.)

Plaintiff admitted that she has not had to ask any of her subsequent employers for any type of accommodation because of her IBS. (Brown Dep. at 32.) She also admitted that Dr. Pendergast never told her that her IBS would prevent her from working at all. (Brown Dep. at 33.)

Plaintiff had to undergo physicals for her subsequent employment with United Cerebral Palsy, Kelly Temporary Services, Apria Health Care and Washington Green ARS and passed without any physical limitations. (Brown Dep. at 26, 40-41.)

Defendants state that Plaintiff has no evidence to refute that Kimmel ever knew that she had IBS. (Brown Dep. at 55.) Plaintiff responds that Kimmel reviewed her complete records, which presumably included the Family Medical Leave documents and/or other excuses associated with an evaluation of "absenteeism." (Brown Dep. at 34; Kimmel Dep. at 49.) However, Kimmel testified that he did not give any consideration as to whether either Fleming or Plaintiff applied for or took FMLA leave and that he was not even aware that Plaintiff applied for or was granted FMLA leave until the instant lawsuit was filed. (Kimmel Dep. at 79-80.)

Plaintiff states that Defendants transferred and hired Caucasian employees throughout the summer of 2004 for Secretarial, Fiscal and Eligibility Worker positions in her department that she was qualified for. She contends that, shortly after the reorganization, the department grew back to the size it was before the reorganization and now it has even more employees.

Defendants deny Plaintiff's inference that Defendant hired Caucasian employees that were similarly situated as the Plaintiff in the summer of 2004 and explain that, when Kimmel assumed the position as Director, there were eight full-time employees and one half-time Director. (Kimmel Dep. at 14-15.) They point out that, immediately following the reorganization, there were five employees and a half-time Director. (Kimmel Dep. at 37-38.) Shortly thereafter, there were seven full-time employees and a half-time Director. (Kimmel Dep. at 38-39.) Sometime thereafter, the department grew to a half-time Director plus nine employees. (Kimmel Dep. at 39.) Finally, it grew to a half-time Director and eleven employees. (Kimmel Dep. at 40.)

They also contend that these facts are immaterial as Plaintiff never applied for any position with the Defendants after her position was eliminated in May 2004. (Brown Dep. at 65-67.) Plaintiff argues that, when Kimmel and Miller Kotula notified her that she was terminated, they did not tell her that she could apply for any future positions that might become available in the department. (Brown Dep. at 51-52.)

Procedural History

Plaintiff filed a charge of discrimination with the Pennsylvania Human Relations Commission ("PHRC") and/or the Equal Employment Opportunity Commission ("EEOC"). On April 17, 2007, she received a notice of right to sue. (Compl. ¶ 14 & Ex. A.)

Plaintiff filed this action on July 16, 2007. Count I alleges that Defendants discriminated against her on the basis of her race, in violation of Title VII, and Count II alleges that they violated her rights under the PHRA and the Pennsylvania constitution. Count III alleges that Defendants discriminated against her on the basis of her disability in violation of the ADA, and

Count IV alleges that they violated her rights under the PHRA and the equal protection clause of the Pennsylvania constitution.

On September 15, 2008, Defendants filed a motion for summary judgment.

Summary Judgment

Summary judgment is appropriate if, drawing all inferences in favor of the non-moving party, "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a genuine issue for trial" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. Matsushita Elec. Indus. Corp. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty- Lobby, Inc., 477 U.S. 242, 248 (1986).

Defendants argue that: 1) Plaintiff cannot state a prima facie case of race discrimination because she cannot point to other similarly situated individuals outside her protected class who were treated more favorably; 2) they have articulated a legitimate, nondiscriminatory reason for her termination and she has not proffered evidence from which a trier of fact could conclude that this reason was a pretext for unlawful race discrimination; 3) she cannot establish a prima facie

case of disability discrimination because she cannot demonstrate that her IBS is a substantially limiting "disability" under the ADA; 4) they have articulated a legitimate, nondiscriminatory reason for her termination and she has not proffered evidence from which a trier of fact could conclude that this reason was a pretext for unlawful disability discrimination; 5) she cannot maintain a claim under the Pennsylvania constitution because any such claims are subsumed under the PHRA; and 6) CCIS is not a separate entity from Washington County and should be dismissed from this action.[5]

Plaintiff responds that: 1) she has pointed to Kelly Hanna as a similarly situated individual who had extended absences but was not terminated; 2) she has pointed to evidence of pretext in that Defendants are contending that her position was eliminated for "budgetary" reasons but the budget remained intact and all the positions that were eliminated were refilled shortly thereafter; 3) she has stated a prima facie case of disability discrimination because her IBS was not asymptomatic; 4) she has pointed to evidence of pretext with respect to Defendants' treatment of Kelly Hanna; 5) the state constitutional claims rest on the same basis as the federal claims; and 6) CCIS is not funded solely with county taxpayer funds.

<u>Prima Facie Case of Race Discrimination</u>

Title VII provides that it is an unlawful employment practice for an employer to discriminate against an individual with respect to conditions of employment because of her race. 42 U.S.C. § 2000e-2(a). Discrimination on the basis of race is also prohibited by the PHRA. 43 P.S. § 955. In the absence of direct evidence of discrimination, a plaintiff may establish a prima facie case of discrimination indirectly following the shifting burden analysis set forth by the

---

[5]The Court need not address all of these arguments.

Supreme Court in McDonnell Douglas v. Green, 411 U.S. 792, 802 (1973) and refined in Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981). Farrell v. Planters Lifesavers Co., 206 F.3d 271, 278-79 (3d Cir. 2000).

As the Court of Appeals for the Third Circuit has stated:

> The existence of a prima facie case of employment discrimination is a question of law that must be decided by the Court. It requires a showing that: (1) the plaintiff belongs to a protected class; (2) he/she was qualified for the position; (3) he/she was subject to an adverse employment action despite being qualified; and (4) under circumstances that raise an inference of discriminatory action...

Sarullo v. U.S. Postal Serv., 352 F.3d 789, 797 (3d Cir. 2003) (footnote and citations omitted).

If the employee presents a prima facie case of discrimination, the employer must "articulate some legitimate, nondiscriminatory reason for the [adverse employment action]." McDonnell Douglas, 411 U.S. at 802. If the employer specifies a reason for its action, the employee must have an opportunity to prove the employer's reason for the adverse employment action was a pretext for unlawful discrimination. Id. at 804. The Court of Appeals for the Third Circuit has stated that:

> [T]o avoid summary judgment, the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder to reasonably infer that each of the employer's proffered non-discriminatory reasons was either a post hoc fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext).

Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994) (citations omitted). Cases under the PHRA follow this same analysis. Burgh v. Borough Council of Borough of Montrose, 251 F.3d 465, 469 (3d Cir. 2001) (race discrimination).

Defendants argue that Plaintiff has not identified similarly situated employees who received more favorable treatment because she refers only to Kelly Hanna, who was not a proper

comparator. They note that Hanna is a Resource and Referral Specialist and that position indicates that a Bachelor's degree in Social Work, Psychology, Sociology or a related field or experience in Resource and Referral is preferred, but Plaintiff does not have this level of education or experience.

However, as the Court of Appeals has clarified, although some previous cases had created confusion by referring to favorable treatment outside the protected group as a prima facie case element, "[u]nder McDonnell Douglas, evidence of favorable treatment outside the protected class is not an element of a prima facie case." Matczak v. Frankford Candy and Chocolate Co., 136 F.3d 933, 939 (3d Cir. 1997) (citing McDonnell Douglas, 411 U.S. at 802). See also Simpson v. Kay Jewelers, 142 F.3d 639, 646 (3d Cir. 1997) (evidence that a non-member of the protected class was treated more favorably is enough for purposes of the prima facie case and the issue of whether the individual is "similarly situated" is more appropriately addressed at the pretext stage of the analysis). Thus, Plaintiff need not demonstrate that a white employee with numerous absences was treated more favorably than she was in order to state a prima facie case of racial discrimination.

Moreover, as Plaintiff notes, Defendants have not explained how distinctions in education level or work experience between her position and Hanna's are relevant if the deciding factor is attendance, which is not dependent on such factors. Thus, even if she had to point to a similarly situated non-member of the protected class, she has done so by pointing to Kelly Hanna. Therefore, she has stated a prima facie case of racial discrimination.

<u>Defendants' Proffered Reason</u>

The burden of production therefore shifts to Defendants to articulate a legitimate, non-discriminatory reason for Plaintiff's termination. They contend that the decision was made to eliminate one of two Information Specialist positions and that Kimmel chose Plaintiff's position for elimination because of her absences. Although he did not consider her excused absences, he did consider her unexcused absences and the fact that she had been sent to EAP for counseling because of her absences and she even failed to attend a session. Finally, he also considered the personal problems that Plaintiff had brought to work, which concerned her co-workers. Specifically, she had told her co-workers that a drive-by shooting had occurred at her home and the co-workers had expressed concern for their own safety because they work with her.

Defendants have met their burden of production. Therefore, Plaintiff is required to point to evidence from which the trier of fact could conclude that Defendants' proffered reason is a pretext for unlawful race discrimination.

Plaintiff's Evidence of Pretext

Plaintiff proceeds along "Fuentes prong one" by arguing that she has submitted evidence from which a factfinder could reasonably disbelieve the employer's articulated legitimate reason. Keller v. ORIX Credit Alliance, Inc., 130 F.3d 1101, 1108 (3d Cir. 1997) (en banc). Specifically, she contends that: 1) the reorganization plan was racially motivated to displace one of two African Americans working in the department; 2) Kelly Hanna received more favorable treatment in that she was a white employee with attendance issues who was not fired; and 3) reliance upon her co-workers' stereotyped fears is itself a form of discrimination.

However, as Defendants observe, Plaintiff offers no evidence in support of these arguments. With respect to the first argument, Defendants note that three other employees were

also eliminated in the reorganization and Plaintiff has proffered no evidence that they were members of a protected class. Moreover, Kimmel testified that he focused on the positions, not who occupied them and that he did not know any of the individuals in the department. (Kimmel Dep. at 70-72.) Thus, Plaintiff's argument that the reorganization was a pretext by which one of two African American employees would be eliminated is based only on her own speculation and is not supported by any evidence.

With respect to Kelly Hanna, Defendants have explained that Plaintiff's position was eliminated first because Kimmel determined that the department needed only one Information Specialist and second because Plaintiff's absences and personal issues led to his decision to terminate Plaintiff and keep Jerry Fleming. Although Kelly Hanna may have had attendance issues, she is not a true comparator at this stage of the analysis because Kimmel did not determine that it was necessary to eliminate one of multiple Resource and Referral Specialist positions.[6] As stated by the Court of Appeals, a plaintiff "cannot selectively choose her comparator" in order to satisfy her burden of demonstrating that similarly situated persons were treated differently. Simpson, 142 F.3d at 645. Thus, Plaintiff cannot demonstrate pretext by arguing that Defendants did not terminate all employees with attendance issues (such as Kelly Hanna) when Defendants have explained and documented that this was not the reason Plaintiff was terminated.

Finally, with respect to the personal issues, Plaintiff cites no authority to support her contention that an employer may not take into consideration the concerns of an employee's co-

---

[6] As noted, however, Kimmel did determine that the Department needed only two, and not three, Eligibility Coordinators. (Kimmel Dep. at 28.) Plaintiff has not argued that the Eligibility Coordinators who were retained had more absences than she did.

workers as to their safety on the grounds that their fears (i.e., that an individual whose house was subjected to a drive-by shooting might be attacked at work and place other employees at risk of being injured) are based on cultural stereotypes. Moreover, Kimmel's testimony is that the issue he considered was that Plaintiff was disrupting the workplace by talking about personal matters that upset her co-workers.

Plaintiff has failed to point to such "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence,' and hence infer 'that the employer did not act for [the asserted] non-discriminatory reasons." Fuentes, 32 F.3d at 765. Therefore, with respect to Plaintiff's race discrimination claims in Counts I and II, Defendants' motion for summary judgment will be granted.

Disability Discrimination

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Discrimination on the basis of disability is also prohibited by the PHRA. 43 P.S. § 955. Employment discrimination claims under the ADA and PHRA follow the McDonnell-Douglas format. See Gaul v. Lucent Technologies, Inc., 134 F.3d 576, 580 (3d Cir. 1998) (ADA); Rinehimer v. Cemcolift, Inc., 292 F.3d 375, 382 (3d Cir. 2002) (PHRA disability claims).

Defendants contend that Plaintiff cannot state a prima facie case of disability discrimination because her IBS was only episodic and that she has not proffered evidence from which a trier of fact could conclude that their reason was a pretext for unlawful disability discrimination. Because the latter argument is availing, the Court will assume without deciding that Plaintiff could state a prima facie case.

As explained above, Defendants have proffered a legitimate, non-discriminatory reason for Plaintiff's termination: it was determined that only one Information Specialist position was required and her absences, even if some of them were excused, led to Kimmel's decision to eliminate her position rather than Jerry Fleming's, in addition to his concerns about personal issues she brought to work that upset her co-workers. Plaintiff has not has not proffered evidence from which a trier of fact could conclude that this reason was a pretext for unlawful disability discrimination. Therefore, with respect to Plaintiff's disability discrimination claims in Counts III and IV, Defendants' motion for summary judgment will be granted.

Finally, Defendants note that Plaintiff appears to be attempting to raise an FMLA retaliation claim that is not pled in her complaint, that she cannot raise this claim now because the statute of limitations has expired, and that she could not maintain such a claim in any event because Kimmel was unaware that she had applied for and been granted FMLA leave at the time he made the decision at issue in this case. (Kimmel Dep. at 79-80.) To the extent that Plaintiff is attempting to raise such a claim, Defendants are correct that it is not pled in her complaint, she cannot raise it at this stage of the proceedings because the statute of limitations has expired, see 29 U.S.C. § 2617(c)(1), and Kimmel has testified that he was unaware that she had applied for and been granted FMLA leave.

17

Based on the foregoing, the motion for summary judgment filed by Defendants Washington County and Washington County Child Care Information Services will be granted. An appropriate order follows.

/s/ <i>Amy Reynolds Hay</i><br>
United States Magistrate Judge

Dated:   27 May, 2009

cc:    All counsel of record by Notice of Electronic Filing